STEVE McCLINTOCK, Appellant, v. KELLY L. McCLINTOCK, fka KELLY LEE TOLAS, Respondent.

No. 42703

July 20, 2006                                                    138 P.3d 513

Bruce I. Shapiro, Henderson, for Appellant.

Law Office of Marshal S. Willick, PC, and Marshal S. Willick, Las Vegas, for Respondent.

---

[47]We have considered all other issues raised by the parties and conclude that they are without merit.

Before Maupin, Gibbons and Hardesty, JJ.

## OPINION

By the Court, Gibbons, J.:

In this appeal, we consider whether the district court may use a nunc pro tunc order to modify the date of a divorce decree. Because a nunc pro tunc order can only reflect that which was actually done, we conclude that the district court cannot use a nunc pro tunc order to change the date of a divorce decree to a date before the date when the matter was adjudicated. Since, in this case, the district court's order changed the date of a divorce decree to a date before the district court adjudicated the matter, we reverse the order and remand for proceedings consistent with this opinion.

### FACTS

Respondent Kelly McClintock and appellant Steve McClintock met while both were still married to other people. After deciding that they wanted to marry each other, Steve obtained a divorce from his wife. Kelly filed a joint petition for divorce on behalf of herself and her then-husband, John Tolas, on September 2, 1993. The next day, September 3, 1993, Kelly and Steve wed. The district court, however, did not sign the joint petition in the Tolas case until September 21, which was then filed on September 23, 1993.

For the next ten years, Steve and Kelly believed they were lawfully married and held themselves out as husband and wife. After disagreements arose, the couple separated. In November 2002, Kelly filed for divorce from Steve. When Steve discovered that Kelly was still married to John Tolas at the time of Steve and Kelly's marriage ceremony, he answered and counterclaimed for annulment. Steve contended that their 1993 marriage was void be-

cause Kelly had not yet obtained a divorce when he and Kelly were married.

The district court granted Steve's summary judgment motion pursuant to a stipulation by both Steve and Kelly that they were never married and that their purported marriage was void. One month later, Kelly filed a motion to set aside the stipulation and order declaring her marriage to Steve void, arguing that the district court should hear the matter on its merits. The district court, finding that Kelly's attorney had not obtained her permission to file the stipulation that her marriage to Steve was void, set aside the stipulation and allowed the parties to go forward with an evidentiary hearing. In the meantime, and relying on the stipulation and order declaring the McClintock marriage void, Steve married Marla McClintock.

Thereafter, Kelly moved the district court, in the Tolas divorce case, for nunc pro tunc entry of the divorce decree to September 2, 1993, a day before her marriage to Steve.[1] Steve filed a motion to intervene in the proceedings, and Kelly opposed Steve's motion. Steve was permitted limited intervention in the proceedings, so that he could participate in the evidentiary hearing and demonstrate how Kelly's nunc pro tunc motion would materially affect the outcome of his position in the McClintock divorce proceedings.

After an evidentiary hearing, the district court found that both Steve and Kelly believed at the time of their marriage that Kelly was divorced from John Tolas and relied on that fact in choosing to marry when they did. Therefore, the district court found that Steve and Kelly entered into their marriage in good faith. The district court granted Kelly's motion for a nunc pro tunc entry of the original decree of divorce to September 2, 1993, finding that

> [t]he Tolas case was completely uncontested, agreed, and submitted, and involved no judicial decision or discretion of any kind; there was no hearing. The actual signature by the judge of the decree, and the physical filing of that document at the Clerk's office, were administrative tasks which could just as easily have been accomplished that day or three weeks later, as they were *pro forma* clerical functions.

The district court's decision effectively legitimated the McClintock marriage, which invalidated Steve's marriage to Marla. Steve filed this timely appeal.[2]

---

[1]John Tolas did not participate in the proceedings.

[2]We previously concluded that Steve may appeal from the district court's order in the Tolas case because he is an aggrieved party within the meaning of NRAP 3A(a), as he was permitted to intervene and since his personal rights were adversely affected by the district court's nunc pro tunc modification of the Tolas divorce decree.

## DISCUSSION

We conclude that the McClintock marriage is void because Kelly was still married to John Tolas when she participated in a marriage ceremony with Steve. Therefore, we agree with Steve's contention that the district court abused its discretion by modifying the divorce decree in the Tolas marriage, nunc pro tunc, for the purpose of legitimizing the otherwise void McClintock marriage.

We have stated that the district court may amend a judgment nunc pro tunc if "the change will make the record speak the truth as to what was actually determined or done or *intended to be determined or done* by the court."[3] We noted in *Finley v. Finley* that "[t]he court may amend to correct mere clerical errors or omissions at any time and has inherent power to do so."[4] However, the district court may not use a nunc pro tunc order to change a "judgment actually rendered to one which the court neither rendered nor intended to render."[5]

Further, our decision in *Koester v. Estate of Koester* is distinguishable from the facts of this case.[6] In *Koester*, the district court filed a decision on a contested issue in a divorce proceeding on July 17, 1979. The district court judge signed the findings of fact, conclusions of law and divorce decree on July 30, 1979. That same afternoon, the wife died in a car accident, but the findings of fact, conclusions of law and decree of divorce were not filed with the clerk until July 31, 1979.[7] We upheld the district court's order for entry of a nunc pro tunc order setting the time of the filing of the divorce decree back to a time before the wife's death because " 'the facts justifying the entry of a decree were adjudicated during the lifetime of the parties.' "[8]

Although the divorce petition in the Tolas case was uncontested and jointly filed, the divorce decree is nevertheless a decision adjudicating the parties' rights and liabilities. The date of the divorce decree also determines the accrual and termination of community property. Here, the district court did not render a decision or take any action as of September 2, 1993, the date Kelly and John Tolas

[3]*Finley v. Finley*, 65 Nev. 113, 119, 189 P.2d 334, 337 (1948), *overruled on other grounds by Day v. Day*, 80 Nev. 386, 395 P.2d 321 (1964).

[4]*Id.* at 119, 189 P.2d at 337.

[5]*Id.* at 118, 189 P.2d at 336.

[6]101 Nev. 68, 693 P.2d 569 (1985).

[7]*Id.* at 70, 693 P.2d at 571.

[8]*Id.* at 73, 693 P.2d at 572 (quoting *Thrash v. Thrash*, 385 So. 2d 961, 962-63 (Miss. 1980)).

filed their joint petition for divorce. The district court did not adjudicate the Tolas divorce until at least September 21, 1993, when a district court judge signed the petition. Our holding in *Finley* cannot be interpreted so broadly as to allow nunc pro tunc modification of divorce decrees, regardless of how simple the proceedings might have been. The district court's decision to approve a petition for divorce is not equivalent to the exercise of a clerical duty that the court may later amend at its discretion. Therefore, the district court abused its discretion by modifying the date of the divorce decree in the Tolas marriage nunc pro tunc.[9]

## CONCLUSION

The district court abused its discretion by moving the date of the Tolas divorce decree, nunc pro tunc, to a date before the district court's adjudication of the matter. We therefore reverse the district court's order.

MAUPIN and HARDESTY, JJ., concur.

---

[9]As previously noted, the McClintock marriage is void. *See* NRS 125.290(2). "An annulment proceeding is the proper manner to dissolve a void marriage and resolve other issues arising from the dissolution of the relationship." *Williams v. Williams*, 120 Nev. 559, 564, 97 P.3d 1124, 1127 (2004).